IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

YOUNG AMERICANS FOR LIBERTY AT
KELLOGG COMMUNITY COLLEGE,
MICHELLE GREGOIRE, and BRANDON
WITHERS,

                             *Plaintiffs*,

          v.

KELLOGG COMMUNITY COLLEGE; The
Trustees of Kellogg Community
College—STEVE CLAYWELL, JILL
BOOTH, MATTHEW A. DAVIS, REBA M.
HARRINGTON, JONATHAN D. BYRD,
JULIE CAMP SEIFKE, PATRICK A.
O'DONNELL—all individually and all in
their official capacities as members of the
Board of Trustees of Kellogg Community
College; MARK O'CONNELL, President of
Kellogg Community College, in his
official and individual capacities; KAY
KECK, Vice President for Student and
Community Services of Kellogg
Community College, in her official and
individual capacities; TERAH ZAREMBA,
Dean of Student Services of Kellogg
Community College, in her official and
individual capacities; DREW
HUTCHINSON, Manager of Student Life
of Kellogg Community College, in his
official and individual capacities; and
HAROLD WEST, Chief of Public Safety
and Director, Student Relations, in his
official and individual capacities.

                             *Defendants*.

Case No.: _____

**VERIFIED COMPLAINT**

**JURY TRIAL REQUESTED**

    Plaintiffs Young Americans for Liberty at Kellogg Community College, Michelle Gregoire, and Brandon Withers, by and through counsel, and for their Complaint against the Defendants, hereby state as follows:

## INTRODUCTION

1. The campus of a public university has been called a "marketplace of ideas." That marketplace depends on free expression by students. That marketplace depends on free and vigorous debate and expression between students—debate and expression that is spontaneous, ubiquitous, and often anonymous—and is carried out through spoken word, flyers, signs, and displays.

2. By policy and practice, Kellogg Community College ("KCC" or the "College") claims the unchecked right to prohibit students from engaging in practically any constitutionally protected expression anywhere on campus unless they first obtain permission from KCC officials. When students request permission, the College's Solicitation Policy (the "Speech Permit Policy") grants KCC officials unbridled discretion to restrict the content and viewpoint of student speech if it does not "support the mission of Kellogg Community College (KCC) or the mission of a recognized college entity or activity." Thus, students may not speak spontaneously anywhere on campus. Furthermore, KCC maintains an unwritten speech zone policy limiting student expression to one location on campus. If students express themselves on campus without a permit or in any other location, KCC deems them to be violating the *Code of Conduct for Students*, which exposes them to a variety of sanctions, including expulsion. Through the permitting process, KCC retains unfettered discretion to determine both whether students may speak at all and where they may speak. In so doing, it fails to protect students against content and viewpoint discrimination. These policies and practices chill protected student speech and disable spontaneous student speech on campus.

3. When Plaintiffs Michelle Gregoire and Brandon Withers, two students at KCC, tried to distribute pocket-size copies of the United States Constitution in an open, generally accessible area of the campus outside the Binda Performing Arts Center, Defendants ordered them to stop because they had not first obtained a permit and

because expression was only permitted in one location. When Mrs. Gregoire, Mr. Withers, and three associates sought to engage interested students in conversation about freedom and liberty on campus, Defendants claimed that they were impeding students' access to education, even though they were not blocking sidewalks, impeding access to buildings, or pursuing students who were not willing to converse. When Plaintiffs politely informed KCC officials that they planned to continue to exercise their First Amendment rights, Defendants arrested Mrs. Gregoire and two of her associates, jailed them, and charged them with trespassing, charges that were quickly dismissed.

4.     Defendants took these actions because of the content and viewpoint of Plaintiffs' expression. In taking these actions, they implemented the challenged KCC policies, violated Plaintiffs' clearly established constitutional rights, and inflicted irreparable injury upon them.

5.     This action is premised on the United States Constitution concerning the denial of Young Americans for Liberty's, Mrs. Gregoire's, and Mr. Withers' fundamental rights to freedom of speech, equal protection of law, and due process of law.

6.     The aforementioned policies and practices are challenged on their face and as applied to Plaintiffs.

7.     Defendants' policies and practices have deprived and will continue to deprive Plaintiffs of their paramount rights and guarantees under the United States Constitution.

8.     Each and every act of Defendants alleged herein was committed under the color of state law as each Defendant exercised power possessed by virtue of state law and each act was made possible only because the Defendant was clothed with the authority of state law.

## JURISDICTION AND VENUE

9.     This civil rights action raises federal questions under the United States

Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10.   This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

11.   This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343, the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02, the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65, and costs and attorneys' fees under 42 U.S.C. § 1988.

12.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

<u>PLAINTIFFS</u>

13.   Plaintiff Young Americans for Liberty at Kellogg Community College ("YAL at KCC") is an unincorporated expressive association comprised of Kellogg Community College students.

14.   YAL at KCC is a non-partisan, student-led organization and was in the process of becoming an officially registered student organization at KCC in the fall of 2016.

15.   Part of YAL at KCC's mission is to be an expressive association at KCC.

16.   YAL at KCC is affiliated with a national organization of the same name, referenced in this Complaint as "YAL National."

17.   YAL National is a non-partisan organization with chapters at public and private universities throughout the country.

18.   Like its national organization, YAL at KCC's mission is to identify, educate, train, and mobilize students to promote the principles of the natural rights of life, liberty, and property.

19.   Plaintiff Michelle Gregoire is a student at KCC.

20.   Mrs. Gregoire is assisting with the formation of a Young Americans for Liberty student club at KCC.

21.   Mrs. Gregoire desires to express her message on KCC's campus through a variety of means including flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students about the natural rights of life, liberty, and property, among other things.

22.   Plaintiff Brandon Withers is a student at KCC.

23.   Mr. Withers is assisting with the formation of a Young Americans for Liberty student club at KCC.

24.   Mr. Withers desires to express his message on KCC's campus through a variety of means including flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students about the natural rights of life, liberty, and property, among other things.

25.   When engaging in these expressive activities, YAL at KCC, Mrs. Gregoire, and Mr. Withers will discuss political, religious, social, cultural, and moral issues and ideas.

## DEFENDANTS

26.   Defendant Kellogg Community College ("KCC") is a public community college organized and existing under the laws of the State of Michigan.

27.   Defendants Steve Claywell, Jill Booth, Matthew A. Davis, Reba M. Harrington, Jonathan D. Byrd, Julie Camp Seifke, and Patrick A. O'Donnell are, and were at all times relevant to this Complaint, members of the Board of Trustees of Kellogg Community College (hereinafter collectively, "Trustee Defendants"), a public community college organized and existing under the laws of Michigan, and are responsible for, among other things, the adoption and authorization of policies that govern students at KCC, including the Speech Permit and Speech Zone Policies.

28.   As members of the Board of Trustees, the Trustee Defendants have the

responsibility for final policymaking authority concerning students at KCC.

29. Each of the Trustee Defendants is responsible for enactment, amendment, and repeal of Board of Trustees' policies, including the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein, and their application to students in restricting their ability to speak freely and without a permit on campus.

30. As members of the Board of Trustees, the Trustee Defendants possess the authority to change and enforce the policies challenged herein.

31. The Trustee Defendants have not modified the challenged policies governing student expression on campus, specifically the Speech Permit and Speech Zone Policies, or the related provisions of the *Code of Conduct for Students* and the related practices challenged herein to comply with the Constitution.

32. Each of the Trustee Defendants acquiesces in, sanctions, and supports the actions of the other Defendants in enforcing the policies, and procedures regarding students' speech activities on campus.

33. Each of the Trustee Defendants are sued in their official capacities for injunctive and declaratory relief and in their individual capacity for damages resulting from the policies challenged herein.

34. Defendant Mark O'Connell is, and was at all times relevant to this Complaint, the President of Kellogg Community College.

35. The Board of Trustees has delegated to the President of the College powers to exercise discretionary authority and to perform duties vested in the Board of Trustees related to the operation, control, and management of the College.

36. Defendant O'Connell is the chief educational and administrative officer of the College.

37. Defendant O'Connell has the authority to delegate authority among subordinates.

6

38.   Defendant O'Connell is responsible for enforcement of College policies, including the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein, and their application to Plaintiffs' speech.

39.   Defendant O'Connell possesses the authority and responsibility for coordination and approval of expression by students, employees, and third parties on campus.

40.   Defendant O'Connell has not instructed KCC personnel, including the other defendants, to change or alter the policies and practices governing student expression on campus, including the Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and the associated practices challenged herein, to comply with constitutional mandates.

41.   As president, Defendant O'Connell has the authority to review, approve, or reject the decisions of other College officials and the other Defendants regarding the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein.

42.   Defendant O'Connell not only authorized, approved, or implemented the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students*, but he also failed to stop any KCC officials from applying these policies to Plaintiffs.

43.   Defendant O'Connell is sued in his official capacity for injunctive and declaratory relief and in his individual capacity for damages resulting from the policies challenged herein.

44.   Defendant Kay Keck is, and was at all times relevant to this Complaint, the Vice President of Student and Community Services for Kellogg Community College.

45.   Defendant Keck, in consultation with Defendant O'Connell, is responsible for enforcement of the Speech Permit and Speech Zone Policies, the related provisions of

the *Code of Conduct for Students*, and their application to Plaintiffs' speech.

46.   Defendant Keck possesses the authority and responsibility for regulation of campus expression by students.

47.   Defendant Keck has authority under the Speech Permit Policy to review, approve, modify, or reject requests by students to use campus facilities and grounds.

48.   Defendant Keck has failed to stop College officials, including the other Defendants, from applying the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein to students, including Plaintiffs.

49.   Defendant Keck possesses the authority to change and enforce the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein.

50.   Defendant Keck has failed to recommend any changes to the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein.

51.   Defendant Keck is sued in her official capacity for injunctive and declaratory relief and in her individual capacity for damages resulting from the policies challenged herein.

52.   Defendant Terah Zaremba is, and was at all times relevant to this Complaint, Dean of Student Services at Kellogg Community College.

53.   Defendant Zaremba has authority under the Speech Permit Policy to review, approve, modify, or reject requests by students to use campus facilities and grounds.

54.   Defendant Zaremba has failed to stop College officials, including the other defendants, from applying the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein to students, including Plaintiffs.

8

55. Defendant Zaremba possesses the authority to change and enforce the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein.

56. Defendant Zaremba has failed to recommend any changes to the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein.

57. Defendant Zaremba is sued in her official capacity for injunctive and declaratory relief and in her individual capacity for damages resulting from the policies challenged herein.

58. Defendant Drew Hutchinson is, and was at all times relevant to this Complaint, Manager of Student Life of Kellogg Community College.

59. Defendant Hutchinson is responsible for interpreting and enforcing policies that regulate students at the College as delegated to him by Defendant Zaremba, including the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* that were applied to Plaintiffs.

60. One of Defendant Hutchinson's responsibilities is to review and give approval or disapproval to requests by students to engage in expressive activities on College property.

61. In executing his duty to review student speech requests and regulate student speech, Defendant Hutchinson implements the College's Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein.

62. Defendant Hutchinson enforced the Speech Permit Policy against Plaintiffs and participated in the decision that Mrs. Gregoire, Mr. Withers, and their associates could not pass out literature or engage students in discussion in an open, generally accessible location on the campus without first obtaining prior permission of the

College.

63.   Defendant Hutchinson enforced the Speech Zone Policy and participated in the decision that Mrs. Gregoire, Mr. Withers, and their associates could not pass out literature or engage students in discussion in an open, generally accessible location on campus because they were not in the Student Center.

64.   Defendant Hutchinson is sued in his official capacity for injunctive and declaratory relief and in his individual capacity for damages resulting from the policies challenged herein.

65.   Defendant Harold West is, and was at all times relevant to this Complaint, Chief of Public Safety and Director of Student Relations of Kellogg Community College.

66.   As Chief of Public Safety, Defendant West is responsible for enforcing policies that regulate students at the College, including the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein that were applied to Plaintiffs.

67.   As Chief of Public Safety, Defendant West oversees all law enforcement officers on campus, as they also enforce KCC's policies that govern student expression.

68.   Defendant West enforced the Speech Permit Policy against Plaintiffs and participated in the decision that Mrs. Gregoire, Mr. Withers, and his associates could not pass out literature or engage students in discussion in an open, generally accessible location on campus without first obtaining prior permission of the College.

69.   Defendant West enforced the Speech Zone Policy and participated in the decision that Mrs. Gregoire, Mr. Withers, and their associates could not pass out literature or engage students in discussion in an open, generally accessible location on campus because they were not in the Student Center.

70.   Defendant West is sued in his official capacity for injunctive and declaratory

relief and his individual capacity for damages resulting from enforcement of the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* challenged herein.

## FACTUAL BACKGROUND

71. Kellogg Community College is a public college organized and existing under the laws of the State of Michigan, and it receives funding from the State of Michigan to operate.

72. The College's campus is composed of various publicly-accessible buildings and outdoor areas, including public streets, sidewalks, open-air quadrangles, and parks. A copy of the College's campus map is attached as Exhibit 1 to this Complaint.

73. The outdoor areas of the College's campus are open to the public, and there are no gates or barriers to pedestrian entry.

74. The campus is maintained like a park with large cultivated grass areas, trees, benches, and sidewalks.

75. The College's campus is approximately sixty-three acres, which is approximately 2,752,071 square feet of land. A Google Maps satellite view of KCC's campus is attached as Exhibit 2 to this Complaint.

76. The College's campus has many suitable streets, sidewalks, open-air quadrangles, parks, and open spaces where expressive activity will not interfere with or disturb the College's activities, its campus environment, or access to its buildings and sidewalks.

77. The College recognizes that organized student groups are a valuable part of the student educational environment, because, while they do not speak for the College and the College is not responsible for the speech of student groups, they further the College's educational mission by fostering an environment of the open exchange of ideas on campus.

78. More than twenty student organizations are recognized by the College each

year.

79.  Student organizations provide opportunities for learning outside the classroom, for meeting other people with similar interests, for developing life, work and leadership skills, for gaining a broader experience and a greater perspective, and for engaging students as citizens of the campus community.

80.  The College requires all recognized student organizations to adhere to its policies and procedures.

**I.   DEFENDANTS' UNCONSTITUTIONAL POLICIES**

   **A.  DEFENDANTS' SPEECH PERMIT POLICY**

81.  Defendants regulate student oral, written, and visual speech through its Solicitation Policy (the "Speech Permit Policy"), which is contained in its *2016–2017 Student Handbook*. A copy of Defendants' *2016–2017 Student Handbook*, which contains Defendants' Speech Permit Policy on pages 49, 74–76, is attached as Exhibit 3 to this Complaint.

82.  As detailed in subsequent paragraphs, Plaintiffs challenge, facially and as-applied, the provisions of Defendants' Speech Permit Policy that do the following:

- Require students and student organizations to get a permit from College officials before engaging in any form of constitutionally protected expression on campus, *see* Ex. 3 at 75 § 3.a ("[U]se of the College grounds by an individual or organization for solicitation is permitted only if the solicitation has been approved by Student Life."); Ex. 3 at 75 § 2.a ("Requests to schedule solicitation on the College grounds shall be made to the Student Life office in writing during regular business hours on a form supplied by the College."); Ex. 3 at 75 § 3.b (mandating that students or student organizations "requesting use of KCC property for an information table must have written authorization from Student Life."); *see also infra* ¶¶ 87–88, 96–98, 104–05;

- Grant College officials unbridled discretion to approve or reject requests for permits from students or student organizations to engage in expression on campus, *see* Ex. 3 at 75 § 2.b (granting the Student Life Office "authority to approve, modify or deny an application for solicitation in order to assure the reasonable conduct of public business, the educational process, unobstructed access to the College for its students, faculty, employees, occupants and the public, and to maintain the College grounds"); *see also infra* ¶¶ 89–91, 102–03;

- Prohibit students from engaging in certain forms of constitutionally protected speech even when they have a permit, *see* Ex. 3 at 75 § 3.c (prohibiting students from "approach[ing] individuals" or "[c]all[ing] out to . . . individuals"); *see also infra* ¶ 99;

- Empower College officials to shut down any expression that, in their view, violates the Speech Permit Policy, *see* Ex. 3 at 76 § 3.e (allowing KCC officials to "stop any solicitation when it . . . violates any of the conditions governing solicitation under this policy"); *see also infra* ¶ 100;

- Grant College officials unbridled discretion to determine what expression "support[s] the mission of [KCC] or the mission of a recognized college entity or activity" and to shut down expression that, in their view, does not meet this description, *see* Ex. 3 at 49; *see also infra* ¶¶ 106–12.

83. Defendants' Speech Permit Policy defines "solicitation" to include a wide variety of expression, all of which is protected by the First Amendment.

84. Defendants' Speech Permit Policy defines "solicitation" as "activities or events, normally in short duration, as the carrying or displaying of signs or placards, leafleting, campaigning, marches, rallies, parades, demonstrations, protests, assemblies, speeches, circulation of petitions, and or any public demonstration on the

grounds." Ex. 3 at 75 § 1.c.

85.   Defendants' Speech Permit Policy governs all of these forms of expression wherever they may occur on campus.

86.   Defendants' Speech Permit Policy defines the grounds of the College as "all lands and buildings of all campuses of Kellogg Community College and include the exterior walls and surfaces of the buildings, entrances, porches, outside staircases, sidewalks, parking lots and all fixtures." Ex. 3 at 74 § 1.b.

87.   Defendants' Speech Permit Policy provides that "[u]se of the College grounds by an individual or organization for solicitation is permitted only if the solicitation has been approved by Student Life." Ex. 3 at 75 § 3.a.

88.   Defendants' Speech Permit Policy further provides that "[r]equests to schedule solicitation on the College grounds shall be made to the Student Life office in writing during regular business hours on a form supplied by the College." Ex. 3 at 75 § 2.a.

89.   Under the Speech Permit Policy, the Student Life Office has the "authority to approve, modify or deny an application for solicitation in order to assure the reasonable conduct of public business, the educational process, unobstructed access to the College for its students, faculty, employees, occupants and the public, and to maintain the College grounds." Ex. 3 at 75 § 2.b.

90.   The Speech Permit Policy contains no objective and comprehensive criteria for College officials and the Defendants to use when determining whether to approve, modify, or deny an application for solicitation on campus.

91.   Upon information and belief, Defendants have no policies that set forth objective or comprehensive criteria for College officials, including Defendants, to use when determining whether to approve, modify, or deny an application for solicitation on campus.

92.   Defendants' Speech Permit Policy provides no deadlines or timetables in

which College officials must respond to a request for a permit.

93.  All decisions relating to solicitation permit requests "shall be made as promptly as possible." Ex. 3 at 75 § 2.d.

94.  Students can appeal the denial of a solicitation permit by the Student Life office to the Dean of Student Services. The appeal must be in writing and the Dean must announce a decision "as promptly as possible." Ex. 3 at 75 § 2.e.

95.  Defendants' Speech Permit Policy outlines certain "governing conditions" for student expression, some of which are unconstitutional. Ex. 3 at 75–76 § 3.

96.  Two governing conditions, which Plaintiffs challenge, prohibit students and student organizations from engaging in expression without first getting permission from Student Life. Ex. 3 at 75 § 3.a–b.

97.  Under the Speech Permit Policy, "[u]se of the College grounds by an individual or organization for solicitation is permitted only if the solicitation has been approved by Student Life." Ex. 3 at 75 § 3.a.

98.  Under Defendants' Speech Permit Policy, students or student organizations "requesting use of KCC property for an information table must have written authorization from Student Life." Ex. 3 at 75 § 3.b.

99.  Another governing condition, which Plaintiffs challenge, prohibits students from "approach[ing] individuals" or "[c]all[ing] out to . . . individuals." Ex. 3 at 75 § 3.c.

100.  Another governing condition, which Plaintiffs challenge, empowers KCC officials to "stop any solicitation when it . . . violates any of the conditions governing solicitation under this policy." Ex. 3 at 75 § 3.e.

101.  The remaining governing conditions, which Plaintiffs do not challenge here, prohibit students from blocking access to buildings or College activities, limit how and where signs may be displayed, prohibit "[d]efacing or damaging College grounds," and require students to comply with applicable laws and policies. Ex. 3 at 75–76 §

15

3.d–j.

102. Defendants' Speech Permit Policy does not provide that these "governing conditions" are the only reasons that Defendants may deny a permit request, does not guarantee that requests that satisfy these conditions will be granted, and does not prohibit KCC officials from basing their decisions on other unwritten, unspecified, and discriminatory considerations.

103. Thus, the Speech Permit Policy allows Defendants to deny a student's or student organization's request for a permit even if it satisfied all of the governing conditions.

104. Pursuant to the Speech Permit Policy, a student or student group must obtain the prior written permission of Student Life before they engage in certain types of speech or distribute any written material to any person anywhere on the College campus.

105. Defendants' Speech Permit Policy does not provide a means for students to speak spontaneously on campus for any purpose.

106. Although Defendants' Speech Permit Policy provides that Student Life is not to consider the content of the speech when considering an application, Ex. 3 at 75 § 2.c., the Policy requires College officials to do exactly that.

107. Defendants' Speech Permit Policy states that permission to speak will be given "only when the activities support the mission of Kellogg Community College (KCC) or the mission of a recognized college entity or activity." Ex. 3 at 49.

108. The Speech Permit Policy contains no objective criteria for College officials and the Defendants to use when determining what speech supports "the mission of Kellogg Community College (KCC) or the mission of a recognized college entity or activity."

109. Upon information and belief, Defendants have no policies that set forth objective or comprehensive criteria for College officials, including Defendants, to use

when determining what speech supports "the mission of Kellogg Community College (KCC) or the mission of a recognized college entity or activity."

110. The Manager of Student Life, Defendant Hutchinson, possesses the authority and unbridled discretion to evaluate whether student speech is consistent with the College's mission or the mission of the recognized college entity or activity, and to disallow or place restrictions on the dissemination of that speech based on content and viewpoint.

111. The Speech Permit Policy requires Defendants Zaremba and Hutchinson or their designees to examine the content or viewpoint of expression and censor that expression if they subjectively determine that the speech is not consistent with the College's mission or mission of the recognized college entity or activity.

112. The Speech Permit Policy, which allows Defendant Hutchinson or his designee to grant or deny to students permission to speak on campus, contains no guidelines or standards to limit the discretion of the administrator enforcing the policy.

113. Defendants' Speech Permit Policy contains no deadline by which KCC administrators must decide whether to grant or deny a student's request to speak on campus, meaning the student's request for a speech permit could remain pending indefinitely.

114. Defendants' Speech Permit Policy contains no deadline by which the Dean of Students must rule on a students' or student organization's appeal, providing another way that a request for a speech permit could remain pending indefinitely.

**B. DEFENDANTS' SPEECH ZONE POLICY**

115. Defendants also regulate student oral, written, and visual speech through an unwritten policy that restricts student expression to one location on campus. This unwritten policy will be referred to hereafter as Defendants' Speech Zone Policy. Plaintiffs challenge this policy, facially and as-applied.

116. Defendants' Speech Zone Policy restricts the expressive activities of students and student organizations on campus to information tables that can only be utilized inside the Student Center.

117. Under Defendants' Speech Zone Policy, students and student organizations are not allowed to engage in expressive activities in any outdoor areas of campus.

118. Under Defendants' Speech Zone Policy, students and student organizations may only engage in expressive activity on campus at an information table in the Student Center, and only after having reserved the use of this table with KCC officials.

119. Defendants require students and student organizations who utilize an information table to have "written authorization from Student Life." Ex. 3 at 75 § 3.b.

120. In order to reserve an information table in the Student Center, student organizations must submit a table request form "ten (10) business days" in advance. Ex. 3 at 49.

121. Defendants' Speech Zone Policy contains no objective criteria for College officials, including the Defendants, to use when deciding whether to approve or reject a student organization's request to reserve an information table in the Student Center.

122. Upon information and belief, Defendants have no policies that set forth objective or comprehensive criteria for College officials, including Defendants, to use when deciding whether to approve or reject a student organization's request to reserve an information table in the Student Center.

### C. DEFENDANTS' CODE OF CONDUCT FOR STUDENTS

123. Defendants implement and enforce their Speech Permit and Speech Zone Policies in part through their *Code of Conduct for Students*.

124. As detailed in subsequent paragraphs, Plaintiffs challenge, facially and as-applied, the provisions of Defendants' *Code of Conduct for Students* that implement

the Speech Permit and Speech Zone Policies, namely those that prohibit students from engaging in expression anywhere on campus without first obtaining a permit from College officials. *See* Ex. 3 at 54 (prohibiting "[s]elling or soliciting goods or services on campus without permission from the Student Life Office, or not adhering to the Solicitation Policy after receiving approval for solicitation on campus."); Ex. 3 at 54 (prohibiting making "entry into, presence in, or use of College facilities, equipment or property which has not been reserved or accessed through appropriate College officials."); *see also infra* ¶¶ 126–33.

125. Defendants' *Code of Conduct for Students* governs students' conduct "on College premises or at College sponsored, endorsed, supported, or related events which occur off campus," as well as when their conduct "off campus may adversely affect any interest or mission of the College." Ex. 3 at 51.

126. It is Defendants' policy that any student who fails to comply with its regulations regarding student expression, including their Speech Permit and Speech Zone Policies, violates the *Code of Conduct for Students.*

127. It is Defendants' policy—as expressed in their *Code of Conduct for Students*— that students who engage in expressive activities anywhere on KCC's campus without obtaining prior permission as required by the Speech Permit Policy have violated the *Code of Conduct for Students.*

128. It is Defendants' policy—as expressed in their *Code of Conduct for Students*— that students who engage in expressive activities without using an information table in the Student Center as required by the Speech Zone Policy have violated the *Code of Conduct for Students.*

129. Defendants' *Code of Conduct for Students* prohibits student from "soliciting," which is defined to include "[s]elling or soliciting goods or services on campus without permission from the Student Life Office, or not adhering to the Solicitation Policy after receiving approval for solicitation on campus." Ex. 3 at 54.

19

130. Defendants' *Code of Conduct for Students* prohibits students making "entry into, presence in, or use of College facilities, equipment or property which has not been reserved or accessed through appropriate College officials." Ex. 3 at 54.

131. When enforcing these provisions of the *Code of Conduct for Students*, Defendants do not exempt expression protected by the First Amendment from disciplinary action.

132. The penalties for students and groups that speak without a speech permit can be severe.

133. Defendants' *Code of Conduct for Students* provides that any student that violates the Speech Permit Policy is subject to sanctions ranging from a written warning to suspension to even expulsion from KCC. Ex. 3 at 54–55.

## II.   DEFENDANTS' VIOLATION OF PLAINTIFFS' FREEDOM OF SPEECH

134. Mrs. Michelle Gregoire is a student at KCC, and she wants to start a Young Americans for Liberty group as a registered student organization at KCC.

135. KCC requires a minimum of five student members for a group to be recognized as a registered student organization.

136. In the spring semester of 2016, Mrs. Gregoire went to the outdoor areas of the KCC campus to speak with students about her desire to form a YAL club at KCC and to recruit potential members.

137. KCC administrators stopped Mrs. Gregoire from speaking with students in the outdoor areas of campus. They informed Mrs. Gregoire that she was required to reserve a table in the Student Center to speak with students about YAL at KCC.

138. In stopping Mrs. Gregoire and requiring her to reserve a table in the Student Center, these KCC administrators enforced Defendants' Speech Zone Policy.

139. Pursuant to their instructions, Mrs. Gregoire stopped speaking with the students and reserved a table in the Student Center to recruit students to become members of YAL at KCC.

140. During the reservation process, KCC officials instructed Mrs. Gregoire that while she was at the table, she was unable to approach students or ask them to come to the table to talk about YAL at KCC.

141. In issuing these instructions, these KCC officials were enforcing Defendants' Speech Permit Policy.

142. On the day of the reservation, Mrs. Gregoire set up the table in the Student Center and was prepared to talk with students about YAL at KCC.

143. However, due to KCC's stringent restrictions which prohibited Mrs. Gregoire from initiating conversations with students, Mrs. Gregoire spoke to fewer than five students.

144. As a result of KCC's restrictive speech policies, Mrs. Gregoire was unable to recruit the minimum number of students necessary to form YAL at KCC as a recognized student organization.

145. In September 2016, Mrs. Gregoire contacted Mr. Nathan Berning to assist her with recruiting students for her YAL club. Mr. Berning is a field representative for the Leadership Institute, which is an organization that assists college students to form conservative student groups on college campuses.

146. Mr. Berning asked Mr. Isaac Edikauskas if he would be willing to assist Mrs. Gregoire in recruiting students for her YAL club. Mr. Edikauskas has experience in this process because he is the Vice President of Young Americans for Liberty at Michigan State University. Mr. Edikauskas agreed to assist.

147. Mr. Withers is a student at KCC, was actively involved in helping Mrs. Gregoire launch YAL at KCC, and he also agreed to assist Mrs. Gregoire in recruiting additional students for the YAL club.

148. On September 20, 2016, Mr. Withers went to the KCC campus to assist Mrs. Gregoire, Mr. Berning, and Mr. Edikauskas with recruiting students for YAL at KCC.

149. Mrs. Gregoire decided that the best place to speak with students was on the

large public walkway in front of the Binda Performing Arts Center because there is a lot of student traffic in that area and because students commonly engage one another in conversation on all manner of topics in this area.

150. Shortly after 12:00 p.m., the group began speaking with students about their constitutional rights and handing out copies of the United States Constitution.

151. Mrs. Gregoire participated in speaking with students the entire time that the group was allowed to do so.

152. Mr. Withers participated in speaking with students for a while but then left to run an errand.

153. At any given time, no more than three or four people were speaking with students about their constitutional rights and distributing copies of the United States Constitution.

154. The individuals talking with students were not blocking any entrance or exit to any buildings, impeding access to the buildings or parking lots, or blocking the free flow of traffic on the sidewalks.

155. When the individuals were distributing literature, they did not force the literature on anyone who was unwilling to take it, harass those who were not interested, or chase anyone down so that they would take the literature.

156. When engaging students in conversation, Mrs. Gregoire, Mr. Withers, and the other individuals did not force anyone to participate in a conversation, berate those who were not interested in conversing, or denigrate those who disagreed with them.

157. At approximately 1:42 p.m., Mrs. Gregoire, Mr. Withers, and the other individuals were approached by a KCC administrator. The administrator informed them (1) that they were required to have a permit to solicit on campus and (2) that they needed to go into Student Life and reserve a table inside the Student Center.

158. Mrs. Gregoire informed the administrator that she did not have much success

using a table inside the Student Center and that she preferred to recruit outside in front of the Binda Center. The administrator asked Mrs. Gregoire how much longer they would be recruiting. Mrs. Gregoire said that they would probably be out there another one to two hours. The administrator said that would be fine.

159. About five minutes later, Defendant Hutchinson approached the individuals speaking with students and asked them to stop talking with students.

160. Defendant Hutchinson stated that Mrs. Gregoire, Mr. Withers, and their associates were violating the Speech Permit Policy because they had not obtained a prior permit.

161. Defendant Hutchinson also stated that Mrs. Gregoire, Mr. Withers, and their associates were violating KCC policy because "solicitation" was not allowed in this area of campus.

162. Defendant Hutchinson insisted KCC policy required Plaintiffs to restrict their expression to an information table in the Student Center.

163. By ordering Mrs. Gregoire, Mr. Withers, and their associates to stop their expression because expression was not allowed outside the Binda Center (or anywhere on campus other than the reserved table in the Student Center), Defendant Hutchinson enforced Defendants' Speech Zone Policy against these individuals.

164. Defendant Hutchinson further indicated that Mrs. Gregoire, Mr. Withers, and their three associates were obstructing the students' education by asking them questions, which encouraged them to stop and engage in a conversation.

165. Defendant Hutchinson observed one of the five YAL at KCC representatives ask a passing student, "Do you like freedom and liberty?"

166. Defendant Hutchinson labeled this question "provocative" and insisted that asking this question obstructed students' access to education.

167. Defendant Hutchinson said that "engaging [students] in conversation on their way to educational places" was a violation of the Speech Permit Policy because

it was an "obstruction to their education."

168. Mrs. Gregoire informed Defendant Hutchinson that they were not interfering with students' education because many students said that they were not interested and would just continue on to class.

169. Defendant Hutchinson said that he was concerned that the students from "rural farm areas . . . might not feel like they have the choice to ignore the question." He said that a lot of the students from Calhoun County "are growing up on a farm, or they don't have wifi, they don't have internet, you know it's a very different situation, they were brought up in a very different manner." Defendant Hutchinson said, "That's who I'm trying to protect."

170. Defendant Hutchinson said that Mrs. Gregoire, Mr. Withers, and the other individuals were not allowed to continue speaking with students on the walkway in front of Binda Performing Arts Center.

171. Mr. Berning asked Defendant Hutchinson why they were not allowed to continue speaking with students in this location.

172. Defendant Hutchinson replied, "What I'm saying is we have places where we ask people to do this because if somebody's uncomfortable with what you guys are talking about, it's not an impediment to their education."

173. Pursuant to Defendants' Speech Zone Policy, Defendant Hutchinson instructed Mrs. Gregoire and the other individuals to move their expressive activities to an information table in the Student Center.

174. Defendant Hutchinson emphasized that he was directing Mrs. Gregoire and the other individuals to move their expressive activities based on College policy.

175. Mr. Berning informed Defendant Hutchinson that he and the other individuals were going to continue talking with students in front of the Binda Performing Arts Center because they had a First Amendment right to be there and because they were having a lot of success talking with students in that area.

176. In the short time that Mrs. Gregoire, Mr. Withers, and the others had talked with students, more than twenty students had signed a petition indicating an interest in becoming a member of YAL at KCC.

177. Defendant Hutchinson stated that he was going to have his boss come speak to them.

178. Several minutes later, a security guard approached Mrs. Gregoire, Mr. Berning, and Mr. Edikauskas and asked whether they had been asked to leave. Mr. Berning affirmed that they had been asked to leave but they had a constitutional right to  stay and continue recruiting.

179. The security guard said that he would be right back and then he left.

180. Shortly thereafter, another security guard and Defendant West, KCC's Chief of Public Safety, approached and stated that they were violating the *Code of Conduct for Students* by failing to comply with Defendant Hutchinson's order to stop speaking in front of the Binda Performing Arts Center.

181. Mr. Berning reiterated that they were going to continue exercising their First Amendment rights and would not leave that area.

182. At some point during this confrontation, Mr. Withers returned to join the confrontation between Defendant West and Mrs. Gregoire, Mr. Berning, and Mr. Edikauskas.

183. Defendant West asked Mr. Withers if he was part of the effort to talk with students and hand out literature. Mr. Withers confirmed that he was a member of YAL at KCC and was assisting in the recruiting effort.

184. Defendant West instructed Mr. Withers that he had to leave the campus or he would be arrested.

185. Mr. Withers stated that he had some things that he needed take care of at the school before he left campus.

186. Defendant West ordered Mr. Withers to leave the area and take care of the

other things at the school or he would be arrested for trespassing.

187. Although Mr. Withers disagreed with the unconstitutional order, he complied with Defendant West's order and went into the Student Center to take care of some other business at the school.

188. Mr. Withers did not continue his speech activities because of Defendants' unlawful order.

189. At approximately 2:45 p.m., Defendant West and the other KCC security officials arrested Mr. Berning, Mrs. Gregoire, and Mr. Edikauskas; handcuffed their hands behind their backs; and charged them with trespassing on KCC property.

190. During the arrest, Defendant West instructed Mrs. Gregoire that she could not return to campus without first obtaining his permission.

191. The KCC security officers transported Mr. Berning, Mrs. Gregoire, and Mr. Edikauskas to the County Jail where they were booked on trespassing charges.

192. After more than seven hours in jail, Mr. Berning, Mr. Edikauskas, and Mrs. Gregoire were finally released from jail after posting bond.

193. On November 30, 2016, the county prosecutor dismissed the criminal charges against Mrs. Gregoire, Mr. Berning, and Mr. Edikauskas, *nolle prosequi*.

194. By arresting Mrs. Gregoire, Mr. Berning, and Mr. Edikauskas, Defendant West enforced Defendants' Speech Permit and Speech Zone Policies.

195. However, Mr. Withers has observed students and other individuals engaging in expressive activities that violate Defendants' Speech Permit and Speech Zone Policies.

196. In the fall of 2015, Mr. Withers observed members of Spectrum, the LGBT student organization at KCC, distributing literature to students in the Student Center. These members of Spectrum were not using an information table, but were walking freely around the Student Center, approaching passing students with their literature.

197. Upon information and belief, Defendants were aware of Spectrum's expressive activities, allowed them to take place, and took no action to stop them or limit them to an information table, despite their Speech Zone Policy.

198. In the spring of 2016, Mr. Withers observed a representative of another political organization gathering signatures for a petition in the outdoor, generally accessible areas of campus.

199. Upon information and belief, Defendants did not require this representative of this political organization to obtain administrative permission before engaging in his expressive activities and took no action to stop his expression, despite their Speech Permit Policy.

III. THE EFFECT OF DEFENDANTS' POLICIES ON PLAINTIFFS' SPEECH

200. YAL at KCC, Mrs. Gregoire, and Mr. Wither desire to engage in protected expression on campus—including oral communication and literature distribution—without obtaining prior permission of the College and without confining those activities to the one designated location on campus, but have refrained from doing so for fear of punishment and arrest.

201. Defendants' enforcement of the Speech Permit and Speech Zone Policies and the related provisions of their *Code of Conduct for Students*, Mrs. Gregoire, and Mr. Withers burdens their speech in multiple ways.

202. YAL at KCC, Mrs. Gregoire, and Mr. Withers want to engage in speech in the open, outdoor, generally accessible areas on campus without obtaining prior permission of the College and without being limited to the specific area in the Student Center designated by the school as permissible for such expression.

203. Defendants' Speech Permit and Speech Zone Policies do not provide a means for students to speak or hand out written material spontaneously on campus.

204. Defendants' Speech Permit Policy does not provide any objective criteria for Defendants to use when deciding whether to approve or reject a student's request to

speak on campus.

205. Defendants' Speech Permit Policy does not limit the discretion of Defendants when deciding whether to approve or reject a student's request to speak on campus or in deciding which location a student is allowed to speak.

206. Defendants' Speech Zone Policy restricts student expression to one area of campus, prohibiting it in all other areas, even areas that students routinely access.

207. Defendants' Speech Zone Policy provides Defendants unbridled discretion in deciding whether to grant or deny a student organization's request to reserve an information table in the Student Center.

208. As shown by Defendants' actions, students or student organizations that violate the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* are subject to disciplinary action and arrest under College policies and state criminal trespass laws.

209. YAL at KCC, Mrs. Gregoire, and Mr. Withers are not engaging in certain oral and written speech with other students on campus due to the Speech Permit and Speech Zone Policies.

210. YAL at KCC, Mrs. Gregoire, and Mr. Withers are chilled in their ability to promote YAL at KCC and discuss various YAL-related topics on campus due to the Speech Permit and Speech Zone Policies.

211. If not for the Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students*, YAL at KCC, Mrs. Gregoire, and Mr. Withers would immediately engage in discussions and pass out material about liberty and freedom to other students on campus.

212. YAL at KCC, Mrs. Gregoire, and Mr. Withers refrain from doing so for fear of punishment under Defendants' Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students*. In addition, they fear that Defendants will have them arrested once again if they were to engage in such

expression.

213. The fear of punishment and arrest severely limits YAL at KCC's, Mrs. Gregoire's, and Mr. Withers' constitutionally-protected expression on campus.

### ALLEGATIONS OF LAW

214. At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the State of Michigan.

215. Defendants knew or should have known that by requiring YAL at KCC, Mrs. Gregoire, and Mr. Withers to obtain permission prior to engaging in speech with other students on campus, the College violated YAL at KCC's, Mrs. Gregoire's, and Mr. Withers' constitutional rights.

216. Defendants knew or should have known that by limiting student expression to one location on campus and by setting all of the outdoor, generally accessible areas off limits to student expression, the College violated YAL at KCC's, Mrs. Gregoire's, and Mr. Withers' constitutional rights.

217. Defendants knew or should have known that by arresting Mrs. Gregoire and her two associates for engaging in peaceful expressive activities in an outdoor, generally accessible area of campus, they violated Mrs. Gregoire's constitutional rights.

218. YAL at KCC, Mrs. Gregoire, and Mr. Withers are suffering irreparable harm from the policy and practice of Defendants.

219. YAL at KCC, Mrs. Gregoire, and Mr. Withers have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

220. Unless the policies and conduct of Defendants are enjoined, YAL at KCC, Mrs. Gregoire, and Mr. Withers will continue to suffer irreparable injury.

**FIRST CAUSE OF ACTION**
**Violation of Plaintiffs' First Amendment Right to Freedom of Speech**
**(42 U.S.C. § 1983)**

221. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–220 of this Complaint.

222. Speech is entitled to protection under the First Amendment.

223. Religious and political speech is fully protected by the First Amendment.

224. The First Amendment also protects citizens' right to engage in spontaneous and anonymous speech.

225. The First Amendment rights of free speech and press extend to the campuses of state colleges.

226. The sidewalks and open spaces of the College's campus are at least designated public fora for speech and expressive activities by students enrolled at the College.

227. The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and viewpoint discrimination in the public fora for student speech and expression on the campus of a public college.

228. A public university's ability to restrict speech—particularly student speech—in a public forum is limited.

229. Under the First Amendment's Free Speech Clause, a prior restraint on citizens' expression is presumptively unconstitutional, unless it (1) does not delegate overly broad licensing discretion to a government official, (2) contains only content and viewpoint neutral reasonable time, place, and manner restrictions, (3) is narrowly tailored to serve a significant governmental interest, and (4) leaves open ample alternative means for communication.

230. Defendants' Speech Permit Policy, the related provisions of the *Code of*

*Conduct for Students*, and their practice of forbidding students and student organizations from engaging in speech activities without express written consent violates the First Amendment facially and as applied because it prohibits students and student organizations from engaging in speech in public areas of the campus without prior permission.

231. Defendants' Speech Permit Policy, the related provisions of the *Code of Conduct for Students*, and their practice of requiring students and student organizations to obtain permission in order to engage in speech at the College violates the First Amendment facially and as applied because it prohibits students and student organizations from engaging in spontaneous speech.

232. Defendants' Speech Permit Policy, the related provisions of the *Code of Conduct for Students*, and their practice of requiring students and student organizations to obtain permission in order to engage in speech at the College violates the First Amendment facially and as applied because it is a prior restraint on speech in areas of campus that are at least designated public fora for College students.

233. Defendants' Speech Permit Policy, the related provisions of the *Code of Conduct for Students*, and their practice of requiring students and student organizations to obtain permission in order to engage in speech at the College violates the First Amendment facially because it contains no timeframe in which the College administrators must rule on a student's request for permission to speak. The Policy's failure to ensure a prompt decision creates the risk that KCC will delay a permit request indefinitely.

234. Defendants' Speech Zone Policy, the related provisions of the *Code of Conduct for Students*, and their practice of limiting student expression to information tables in the Student Center violates the First Amendment facially and as applied because it prohibits students and student organizations from engaging in speech in public areas of the campus.

235. Defendants' Speech Zone Policy, the related provisions of the *Code of Conduct for Students*, and their practice of limiting student expression to information tables in the Student Center violates the First Amendment facially and as applied because it prohibits students and student organizations from engaging in spontaneous speech.

236. Defendants' Speech Zone Policy, the related provisions of the *Code of Conduct for Students*, and their practice of limiting student expression to information tables in the Student Center violates the First Amendment facially and as applied because it is a prior restraint on speech in areas of campus that are at least designated public fora for College students.

237. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices are an unconstitutional "time, place, and manner" restriction that violates Plaintiffs' and other students' right to freedom of speech and expression.

238. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices are neither reasonable nor valid time, place, and manner restrictions on speech because they are not content-neutral, they are not narrowly tailored to serve a significant government interest, and they do not leave open ample alternative channels of communication.

239. Requiring advance approval in order to engage in speech in public areas of the College campus is not narrowly tailored to any significant interest.

240. Restricting all student expression to one location on campus (thereby setting the outdoor, generally accessible areas of campus off limits to student expression) is not narrowly tailored to any significant interest.

241. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices are also overbroad because they prohibit and restrict constitutionally protected expression.

242. The government may not regulate speech based on overbroad policies that

encompass a substantial amount of constitutionally protected speech.

243. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices prohibit a wide variety of constitutionally protected forms of expression unless students first get permission from KCC officials and then limit that expression to one location on campus.

244. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices prohibit a substantial amount of constitutionally protected speech in that they prohibit students from engaging in expressive activities without first getting permission from KCC officials and they prohibit students from engaging in expressive activities in the public fora of campus outside the Student Center.

245. The overbreadth of Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices chill the speech of students not before the Court who seek to engage in private expression on campus.

246. Defendants Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices chill, deter, and restrict Plaintiffs from freely expressing their views on a wide variety of social, cultural, political, or religious topics.

247. Defendants violated Plaintiffs' First Amendment right to freedom of speech by ordering them to stop engaging in speech activities and telling them that they would not be allowed to engage in any such speech activities on campus without first obtaining Defendants' permission.

248. Defendants violated Plaintiffs' First Amendment right to freedom of speech by arresting and jailing Mrs. Gregoire and her two associates for engaging in peaceful expressive activities in an outdoor, generally accessible area of campus.

249. Defendants' Speech Permit and Speech Zone Policies, the related provisions

of the *Code of Conduct for Students*, and associated practices grant College administrators unbridled discretion to regulate speech based on content or viewpoint and are not narrowly tailored to a compelling state interest.

250. By granting unbridled discretion to discriminate against speech based on its content or viewpoint, Defendants' Speech Permit and Speech Zone Policies and the related provisions of the *Code of Conduct for Students* violate the First Amendment regardless of whether that discretion has ever been unconstitutionally applied in practice.

251. Defendant Hutchinson exercised the unbridled discretion granted him under the Speech Permit Policy when he informed Plaintiffs that they were required to obtain a permit prior to engaging in discussions with other students or handing out Constitutions on the KCC campus.

252. Defendant Hutchinson exercised the unbridled discretion granted him under Defendants' Speech Zone Policy when he informed Plaintiffs that they were required to stop engaging in discussions with student or handing out Constitutions outside the Binda Performing Arts Center because expression was not permitted at that location.

253. Defendants' Speech Permit and Speech Zone Policies provide no guidelines or standards to limit the discretion of College officials in deciding when or whether to grant or deny a student's request to speak.

254. Defendants' Speech Permit Policy requires Defendants to examine students' speech to determine whether such speech is consistent with the College's mission or the mission of a college entity or activity.

255. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices give Defendants unbridled discretionary power to limit student speech in advance of such expression on campus and to do so based on the content and viewpoint of the speech.

256. These grants of unbridled discretion to College officials violate the First

Amendment because they create a system in which speech is reviewed without any standards, thus giving students no way to prove that a denial, restriction, or relocation of their speech was based on unconstitutional considerations.

257. The First Amendment's prohibition against content and viewpoint discrimination requires Defendants to provide adequate safeguards to protect against the improper exclusion, restriction, or relocation of student speech based on its content or viewpoint.

258. Because Defendants have failed to establish neutral criteria governing the decision whether to allow students to speak, there is a substantial risk that College officials will engage in content and viewpoint discrimination when addressing student speech.

259. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices are content- and viewpoint-based regulations of speech in what is at least a designated public forum for students.

260. Defendants' Speech Permit Policy and associated practices restrict student speech based on whether Defendants believe that the speech is consistent with the University's mission or the mission of a college entity or activity, which requires the Defendants to evaluate the content and viewpoint of the speech.

261. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices violate Plaintiffs' right to free speech as guaranteed by the First Amendment to the United States Constitution.

262. Because of Defendants' actions, Plaintiffs have suffered, and continues to suffer, economic injury and irreparable harm. Plaintiffs are entitled to an award of monetary damages and equitable relief.

263. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment right to freedom of

speech and an injunction against Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

SECOND CAUSE OF ACTION
**Violation of Plaintiffs' Fourteenth Amendment Right to
Due Process of Law
(42 U.S.C. § 1983)**

264. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–220 of this Complaint.

265. The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to due process of law and prohibits Defendants from promulgating and employing vague standards that allow for content or viewpoint discrimination in Defendants' handling of Plaintiffs' speech.

266. The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

267. The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

268. The government also may not regulate speech in ways that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

269. Defendants Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices contain no objective criteria, factors, or standards to guide administrators when deciding whether to grant or deny a student's or student organization's request for a permit to engage in

expression on campus.

270. Defendants' Speech Permit Policy, the related provisions of the *Code of Conduct for Students*, and associated practices contain no objective criteria, factors, or standards to guide administrators when deciding whether a student's or student organization's proposed expression does or does not "support the mission of Kellogg Community College (KCC) or the mission of a recognized college entity or activity."

271. Defendants' Speech Permit Policy, the related provisions of the *Code of Conduct for Students*, and associated practices contain no objective criteria, factors, or standards to guide administrators when deciding whether speech supports the College's mission or the mission of a college entity or activity.

272. Defendants' Speech Zone Policy, the related provisions of the *Code of Conduct for Students*, and associated practices contains no objective criteria, factors, or standards to guide administrators when deciding whether to grant or reject a student organization's request to reserve an information table in the Student Center.

273. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices are impermissibly vague and ambiguous and are thus incapable of providing meaningful guidance to Defendants.

274. The lack of criteria, factors, or standards in Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices renders the policies and practices unconstitutionally vague, facially and as applied, in violation of Plaintiffs' right to due process of law under the Fourteenth Amendment.

275. Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

276. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a

declaration that Defendants violated their Fourteenth Amendment right to due process of law and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### Violation of Plaintiffs' Fourteenth Amendment Right to Equal Protection of the Law
### (42 U.S.C. § 1983)

277. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–220 of this Complaint.

278. The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the equal protection of the laws, which prohibit Defendants from treating Plaintiffs differently than similarly situated students and student organizations.

279. The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

280. Plaintiffs are similarly situated to other students and student organizations at the College.

281. Defendants allow other students and student organizations to speak without prior permission, but prohibit Plaintiffs from speaking unless they have prior permission.

282. Defendants allow other students and student organizations to distribute literature and engage in conversations with students outside their reserved speech zones and outside the Student Center, but prohibit Plaintiffs from doing the same.

283. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices violate various fundamental rights of Plaintiffs, such as their freedom of speech and due process of law.

284. When government regulations, like Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices challenged herein, infringe on fundamental rights, discriminatory intent is presumed.

285. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices have also been applied to discriminate intentionally against Plaintiffs' rights to freedom of speech and due process of law.

286. Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiffs.

287. Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices are not narrowly tailored as applied to Plaintiffs because Plaintiffs' speech does not implicate any legitimate state interest.

288. Defendants have applied the Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices to Plaintiffs in a discriminatory and unequal manner, allowing other student organizations to speak freely and distribute literature when Defendants prohibit Plaintiffs from doing the same, in violation of Plaintiffs' right to equal protection of the laws under the Fourteenth Amendment.

289. The disparate treatment of Plaintiffs compared to similarly situated student organizations based on Defendants' Speech Permit and Speech Zone Policies, the related provisions of the *Code of Conduct for Students*, and associated practices renders the policies and practices unconstitutional, facially and as applied, in violation of Plaintiffs' right to equal protection of the laws under the Fourteenth Amendment.

290. Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of

monetary damages and equitable relief.

291. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their Fourteenth Amendment right to equal protection of law and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A. A declaratory judgment that Defendants' Speech Permit Policy, the related provisions of the *Code of Conduct for Student*s, and associated practices, facially and as-applied, violate Plaintiffs' rights under the First Amendment;

B. A declaratory judgment that Defendants' Speech Permit Policy, the related provisions of the *Code of Conduct for Students*, and associated practices, facially and as-applied, violate Plaintiffs' rights under the Fourteenth Amendment;

C. A declaratory judgment that Defendants' Speech Zone Policy, the related provisions of the *Code of Conduct for Students*, and associated practices, facially and as-applied, violate Plaintiffs' rights under the First Amendment;

D. A declaratory judgment that Defendants' Speech Zone Policy, the related provisions of the *Code of Conduct for Students*, and associated practices, facially and as-applied, violate Plaintiff's rights under the Fourteenth Amendment;

E. A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the Speech Permit Policy, the related provisions of the *Code of Conduct for Students*, and associated practices challenged in this Complaint;

F. A preliminary and permanent injunction prohibiting Defendants, their agents,

officials, servants, employees, and any other persons acting on their behalf from enforcing their Speech Zone Policy, the related provisions of the *Code of Conduct for Students*, and associated practices challenged in this Complaint;

G. Compensatory and nominal damages for the violation of Plaintiffs' First and Fourteenth Amendment rights from the Defendants sued in their individual capacities, including damages associated with the arrest and jailing of Mrs. Gregoire;

H. Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

I. All other further relief to which Plaintiffs may be entitled.

Respectfully submitted this 18th day of January, 2017,

*/s/ Travis C. Barham*

DAVID A. CORTMAN
Georgia Bar No. 188810
TRAVIS C. BARHAM
Georgia Bar No. 753251
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road NE, Ste.
D-1100
Lawrenceville, Georgia 30043
Telephone:  (770) 339–0774
Facsimile:  (770) 339–6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

CASEY MATTOX
Virginia Bar No. 47148
ALLIANCE DEFENDING FREEDOM
440 1st Street, NW, Ste. 600
Washington, D.C. 20001
Telephone:  (202) 393–8690
Facsimile:  (202) 347–3622
cmattox@ADFlegal.org

JESHUA T. LAUKA (P71958)
**DAVID & WIERENGA, P.C.**
99 Monroe Avenue, N.W., Suite 1210
Grand Rapids, Michigan 49503
Telephone:  (616) 454–3883
Facsimile:  (616) 454–3988
jeshua@dwlawpc.com

TYSON C. LANGHOFER
Arizona Bar No. 032589
**ALLIANCE DEFENDING FREEDOM**
15100 North 90th Street
Scottsdale, Arizona 85260
Telephone:  (480) 444–0020
Facsimile:  (480) 444–0024
tlanghofer@ADFlegal.org

*Attorneys for Plaintiffs*

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury for all matters so triable herein.

*/s/ Travis C. Barham*
TRAVIS C. BARHAM
*Attorney for Plaintiffs*

## DECLARATION UNDER PENALTY OF PERJURY

I, MICHELLE GREGOIRE, a citizen of the United States and a resident of the State of Michigan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, except as to statements made on information and belief, and those I believe to be true and correct.

Executed this __11__ day of January, 2017, at <u>Battle Creek</u>, Michigan.

_____

MICHELLE GREGOIRE

42

<u>DECLARATION UNDER PENALTY OF PERJURY</u>

I, MICHELLE GREGOIRE, a member of Young Americans for Liberty at Kellogg Community College, a citizen of the United States, and a resident of the State of Michigan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, except as to statements made on information and belief, and those I believe to be true and correct.

Executed this ___11___ day of January, 2017, at _Battle Creek_ Michigan.

_____
MICHELLE GREGOIRE
YOUNG AMERICANS FOR LIBERTY AT KELLOGG COMMUNITY COLLEGE

<u>DECLARATION UNDER PENALTY OF PERJURY</u>

I, BRANDON WITHERS, a citizen of the United States and a resident of the State of Michigan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, except as to statements made on information and belief, and those I believe to be true and correct.

Executed this __11___ day of January, 2017, at <u>Battle Creek</u> Michigan.

_____

BRANDON WITHERS