

24 August 2017

The Honorable Robert J. Jonker
United States District Judge
U.S. District Court for the Western District of Michigan
685 Federal Building
110 Michigan Street, Northwest
Grand Rapids, Michigan 49503

Re: *Young Americans for Liberty v. Kellogg Cmty. Coll.*, No. 1:17-cv-58.
Response to Defendants' Letter of August 17, 2017

Dear Judge Jonker,

"It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform. . . ." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 n.5 (1953) (citations omitted). Defendants' hollow protestations—in the form of policy changes that are not yet complete and will be updated again in the near future—represent nothing more than jurisdictional gamesmanship. In due course, Plaintiffs will respond to the motion to dismiss and explain why this gambit does not moot any of their claims. For now, we write simply to note that this policy change does not prevent this Court from granting a preliminary injunction and to request that the Court do so, especially as on-campus classes begin on September 6, 2017.

When Plaintiffs' sister chapter sued the University of Cincinnati over very similar policies, the University responded by changing its policies and invoking mootness, just as Defendants do here. *Univ. of Cincinnati Chapter of Young Ams. for Liberty v. Williams*, 2012 WL 2160969, *2 n.1 (S.D. Ohio Jun. 12, 2012).

The *Williams* court rejected this argument, noting that "*a defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case.*" *Id.* (quoting *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 583 (6th Cir. 2012)) (emphasis original). It noted that "Defendants bear 'the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). The University of Cincinnati could not carry this burden. Neither can Kellogg Community College.

In *Williams*, the University president stated that "the old policies will not be reenacted," but this was "insufficient to preclude jurisdiction." *Id.* Here, Defendants do not even provide this minimal assurance. Indeed, they offer no actual evidence that the Speech Permit Policy has been repealed. Defense counsel says the new policies "supersede and abrogate" the Speech Permit Policy, Defs.' Mot. to Dismiss ¶ 2, PageID.441, but "[i]t is well established that statements appearing in a party's brief are not evidence." *Washington v. Davis*, 2017 WL 3025938, *4 n.2 (W.D. Mich. Jun. 20, 2017) (citing, *inter alia*, *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2000)).

Case 1:17-cv-00058-RJJ-RSK    ECF No. 35 filed 08/24/17    PageID.473    Page 2 of 3

The Honorable Robert J. Jonker
*Young Ams. for Liberty v. Kellogg Cmty. Coll.*, No. 1:17-cv-58
24 August 2017
Page 2 of 3

In addition, they are not yet finished adopting new policies. Mr. Greene testifies that KCC will soon adopt "two additional policies," including one "regarding solicitation by non-profit groups, including . . . student organizations." Greene Aff. ¶ 5, PageID. 460. This lawsuit started because Defendants enforced a "Solicitation Policy" (*a.k.a.*, the Speech Permit Policy) against students trying to start a student organization. Now Defendants' counsel says they repealed one solicitation policy, but KCC officials say another is on the way. But Defendants have consistently defended the constitutionality of the challenged policy, as explained below. There is no reason to believe that the new, yet-to-be-unveiled solicitation policy will not "disadvantage Plaintiffs in the same fundamental way as the old one," even if "to a possible lesser degree." *Williams*, 2012 WL 2160969, at *2 n.1 (citing *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993)).

Furthermore, the *Williams* court rejected the mootness argument because "the timing of the University's changes leaves this Court with no assurance that the challenged conduct will not be re-implemented, absent an injunction, at the conclusion of this litigation." *Williams*, 2012 WL 2160969, at *2 n.1 (citing *DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008)). It noted that the University did not change its policies until "after the commencement of this litigation and only a few weeks before the scheduled final injunction hearing." *Id.*

By waiting until *after* the injunction hearing, Kellogg Community College made its efforts to evade jurisdiction even more transparent. After being sued in January 2017, Defendants made no efforts to change their policies but instead filed an answer defending both the policies and their enforcement. After this Court pointed them to Grand Valley State's revised policies, they did nothing. After Plaintiffs filed a preliminary injunction motion, they did nothing. After a magistrate-hosted settlement conference, they did nothing. As the injunction hearing neared, they did nothing. At that hearing, Defendants' counsel repeatedly emphasized that she was defending the policies as written. *See, e.g.*, Tr. of Hrg. on Pls.' Mot. for Prelim. Inj. at 5:11–12, PageID.394 ("So I don't have any problem defending the policy."); *id.* at 18:11–14, PageID.407 ("So you've made it clear to me I have an uphill battle, but . . . I feel strongly about my client's case, and my client feels strongly about its case. . . ."); *id.* at 19:1–2, PageID.408 ("The question is is the policy as it stands today unlawful? And I submit to you strongly that the answer is no."); *id.* at 20:10–17, 23:16–18, 24:4–9, PageID.409, 412–13 (insisting that KCC could constitutionally restrict spontaneous speech that lacked prior permission). Only after taking this Court's temperature at that hearing did Defendants decide to change their policies. Plus, if they can change a policy in the two weeks following a hearing, nothing would stop them from changing back just as fast. Thus, Defendants have not made it "absolutely clear" that they will not revert back to the challenged policies. *Williams*, 2012 WL 2160969, at *2 n.1.

Last, the *Williams* court rejected the mootness argument because "the University continues to defend the constitutionality of its former policy." *Id.* As recently as August 1, 2017, Defendants did likewise. Even in their latest motion, they refuse to concede that their policies or their enforcement of those policies violated Plaintiffs' rights. Defs.' Mot. to Dismiss Br. at 9–10, PageID.455–56 ("Plaintiffs allege no facts that the individual Defendants knew in the Spring of 2016 that Defendant KCC's policies were unconstitutional on their face or that any of their specific conduct violated Plaintiffs' constitutional rights by enforcing those policies."). They even continue to insist that arresting individuals for handing out copies of the U.S. Constitution on an open, expansive sidewalk was reasonable. *Id.* ("[T]here is no evidence that

Case 1:17-cv-00058-RJJ-RSK    ECF No. 35 filed 08/24/17    PageID.474    Page 3 of 3

The Honorable Robert J. Jonker
*Young Ams. for Liberty v. Kellogg Cmty. Coll.*, No. 1:17-cv-58
24 August 2017
Page 3 of 3

any of the individual Defendants acted unreasonably when they enforced the policies and eventually, Defendant West, arrested Plaintiff Gregoire.").

In *Williams*, the timing of the policy changes and they continued defense of the policies were "significant in determining whether there is a reasonable expectation that the challenged conduct may recur" and in rejecting mootness. *Williams*, 2012 WL 2160969, at *2 n.1. Kellogg Community College's effort to avoid an adverse ruling after this Court's hearing while still justifying its policies and practices could not be more clear. Thus, Plaintiffs' respectfully request that this Court grant their motion.

By granting Plaintiffs' motion, this Court would break no new ground. Despite the last-minute policy changes, the *Williams* court issued a preliminary injunction against the challenged speech zone restrictions. *Id.* at *9. Other courts in the Sixth Circuit have done likewise. *See, e.g., Jones v. Coleman*, 2017 WL 1397212, *3, 6 (M.D. Tenn. Apr. 19, 2017) (granting preliminary injunction despite mootness claim based on voluntary cessation); *NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2016 WL 8202966, *12 (S.D. Ohio Nov. 22, 2016) (same); *Mich. Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897, 904–05, 908 (E.D. Mich. 2015) (same). Indeed, several have even issued a permanent injunction, despite the fact that defendants voluntarily stopped the challenged practice. *Williams v. City of Cleveland*, 210 F. Supp. 3d 897, 908–09 (N.D. Ohio 2016); *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 2010 WL 3732200, *11–12 (S.D. Ohio Sept. 20, 2010) (granting permanent injunction against statute that was the subject of the voluntary cessation argument). One specifically prohibited defendants from "reinstituting" the challenged practices. *Williams*, 210 F. Supp. 3d at 908–09.

In sum, Defendants' litigation tactic of changing policies only after assessing the Court's reaction to those policies neither moots this case nor prevents this Court from issuing the requested injunction. Therefore, Plaintiffs respectfully request that this Court issue a preliminary injunction that prohibits Defendants from:

1. Enforcing the challenged portions of the Speech Permit Policy. *See* Pls.' Mot. for Prelim. Inj. ¶ 1, PageID.273–74.
2. Enforcing challenged portions of the Speech Zone Policy. *See id.* ¶ 2, PageID.274–75.
3. Enforcing the provisions of the *Code of Conduct for Students* that implement these policies. *See id.* ¶ 3, PageID.275.
4. "[I]mposing or enforcing any policy restricting student speech in any designated public forum," including campus sidewalks and outdoor spaces generally available to students, that are "not individually and narrowly tailored to serve a compelling [College] interest." *William*, 2012 WL 2160969, at *9.
5. Reinstituting the challenged portions of the Speech Permit Policy, the Speech Zone Policy, and the associated provisions of the *Code of Conduct for Students*.

Sincerely,

*[signature]*

Travis Christopher Barham
Legal Counsel
ALLIANCE DEFENDING FREEDOM